UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SEAMUS A. ACTON
        Plaintiff,                            Civil Action No.
                                                      **COMPLAINT**

                                                      COLLECTIVE ACTION UNDER
      -against-                              29 U.S.C. § 216(b)

POWERLINE CYCLES, INC., THOMAS BRUNO
and MARK ROMACCI                           ECF CASE
        Defendants.
------------------------------------------------------------X

        Plaintiff, SEAMUS A. ACTON, by his attorney, Bernard Weinreb, as and for his Complaint against Defendants, POWERLINE CYCLES, INC., THOMAS BRUNO and MARK ROMACCI, alleges as follows:

## I. NATURE OF CLAIM

1.    This is an action for damages on behalf of Plaintiff, SEAMUS A. ACTON (the "Plaintiff"), pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§207, 216(b) and 260 ("FLSA"), to remedy violations by Defendants, POWERLINE CYCLES, INC., THOMAS BRUNO and MARK ROMACCI (collectively referred to in this Complaint as the "Defendants") who deprived him of his lawful wages and overtime pay to which he is entitled under such laws. Plaintiff also seeks relief under the New York Labor Law sections 190-99, 652 and 663 including the wage order entitled "Miscellaneous Industries and Occupations," 12 N.Y.C.R.R. Section 142-3.2 ("New York Labor Law"), and other State Laws that are parallel to the Federal Laws set forth in this paragraph. Finally, defendants committed other wrongs against him, as set forth below, for which Plaintiff seeks to recover damages.

## II. JURISDICTION and VENUE

2.    The jurisdiction of this Court to adjudicate Plaintiffs' First and Twelfth claims are invoked pursuant to 28 U.S.C. sections 1331 and 29 U.S.C. section 216(b), this being a suit authorized and instituted pursuant to the FLSA.

3. The jurisdiction of this Court to adjudicate Plaintiff's other claims for relief in this action are invoked pursuant to 28 U.S.C. section 1367(a), as these claims are so related as to form part of the same case or controversy.

4. Venue is proper in this district under 28 U.S.C. §1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, and Defendants operates its business in this district. Plaintiffs were employed by Defendants in this District.

### III. PARTIES

5. At all times relevant to this action, Plaintiff resided in Putnam County, New York.

6. Plaintiff, Seamus A. Acton, is, and was at all times relevant to this Complaint, a citizen of the United States and a resident of the City of Mahopac, County of Putnam, State of New York. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant, Powerline Cycles, Inc., (the "Corporation" or the "Employer") and was otherwise covered under each of the statutes described in paragraph 1 of this Complaint above. Plaintiff worked as a technician, most recently as head technician, at Plaintiff for all periods relevant to the Complaint.

7. The Corporation is located in Putnam County, New York. The Corporation is an "employer" and is otherwise covered under each of the statutes described in paragraph 1 of this complaint above. Upon information and belief, the Corporation is a domestic corporation organized and existing under the laws of the State of New York.

8. Upon information and belief, Thomas Bruno, one of the Defendants in this action, is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period in this Complaint. Defendant, Thomas Bruno, is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Thomas Bruno, for all periods relevant to the Complaint, possessed operational control over Defendant Corporation, an ownership interest in Defendant, Corporation, and/or controlled significant functions of Defendant, Corporation. He determined the wages and compensation of the employees of the Corporation, including

Plaintiff's, established the schedules of the employees, was responsible for maintaining employee records, and/or had the authority to hire and/or fire employees.

9. Mark Romacci, one of the Defendants in this action, is employed at the Corporation and was also Plaintiff's supervisor. Defendant, Mark Romacci, is sued individually in his capacity as owner, officer and/or agent of Defendant, Corporation. Defendant Mark Romacci, for all periods relevant to the Complaint, possessed operational control over Defendant Corporation, an ownership interest in Defendant, Corporation, and/or controlled significant functions of Defendant, Corporation. He determined the wages and compensation of the employees of the Corporation, including Plaintiff's, established the schedules of the employees, was responsible for maintaining employee records, and/or had the authority to hire and/or fire employees.

### *Defendants Constitue Joint Employers*

10. Defendants operate a company which sells and repairs motorcycles.

11. Individual Defendant, Thomas Bruno, possesses operational control over the Defendant, Corporation, possesses ownership interest in the Defendant, Corporation, and/or controls significant functions of Defendant, Corporation.

12. Individual Defendant, Mark Romacci, possesses operational control over the Defendant, Corporation, possesses ownership interest in the Defendant, Corporation, and/or controls significant functions of Defendant, Corporation.

13. One or both of the individual Defendants are associated and joint employers with the Corporation, act in the same interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

14. Each Defendant possessed substantial control over Plaintiff's (and other similarly situated employees) working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff and all similarly situated individuals referred to herein.

15. Defendants jointly employed Plaintiff (and all similarly situtated employees) and are Plaintiff's (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 et seq. and the New York Labor Law.

16. Alternatively, Defendants constitute a single employer of Plaintiff and/or similarly situated employees.

17. Upon information and belief, individual Defendants, Thomas Bruno and/or Mark Romacci, operates the Corporation as either an alter ego of himself and/or fails to operate Defendant, Corporation as an entity legally separate and apart from himself by among other things:

   a) failing to adhere to corporate formalities necessary to operate Defendant Corporation as a corporation,

   b) defectively forming or maintaining the corporate entity of Defendant Corporation by, among other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c) transferring assets and/or debts freely as between the Defendants.

   d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

   e) operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed corporation,

   f) intermingling assets and/or debts of his own with Defendant Corporation,

   g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

   h) other actions evincing a failure to adhere to the corporate form.

18. At all times relevant to the Complaint, Defendants were Plaintiff's employers within the meaning of the FLSA and New York Labor Law, Defendants had the power to hire and fire Plaintiff, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff's services.

19. Upon information and belief, in each year from 2019 to 2021, Defendants, both separately and jointly had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated.)

20. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items

that were used in the business are goods and/or parts produced outside of the State of New York.

### *Individual Plaintiff*

21. Plaintiff is a former employee of Defendants who was employed as a technician.

22. Plaintiff seeks to represent a class of similarly situated individuals under 29 U.S.C.

23. Plaintiff was employed by Defendants from approximately July 2016, on a part time basis, and from approximately June 2017 on a full time basis, until on or about November 3, 2021.

24. Defendants employed Plaintiff as a technician, most recently as head technician.

25. Plaintiff regularly handled goods in interstate commerce, such as parts for the motorcycles.

26. Plaintiff's work duties required neither discretion nor independent judgment.

27. Plaintiff commenced working for the Corporation as a mechanic on a part time basis in July 2016, while he was still in high school.

28. Upon Plaintiff graduating from high school, in June, 2017, Plaintiff commenced working on a full time basis, as will be discussed in more detail below.

29. While Plaintiff enjoyed working for the Corporation early on, the work environment developed into being very hostile, during which time the Defendants became physically and verbally abusive to Plaintiff, as discussed below in the Complaint. The environment at the Corporation became so intolerable that the Plaintiff had no choice but to terminate his employment at the Corporation -- i.e., he was constructively discharged by the Employer-- during November 2021, as described in the Complaint below.

30. Furthermore, as discussed below, the Corporation violated several other laws vis a vis Plaintiff for which Plaintiff is seeking the recovery of damages, as discussed below.

31.     Plaintiff complained to Mr. Bruno and Mr. Romacci on several occasions about the hostile environment to which he was subjected to on an ongoing basis. In most of these conversations, not only did the individual Defendant to whom Plaintiff complained not address Plaintiff's complaints but, instead, joined in and participated in the continuing abuse of Plaintiff and, even during such conversations, the individual(s) involved (*i.e.*, Mr. Bruno and/or Mr. Romacci) would continue yelling, berating, cursing and often grabbing Plaintiff resulting in unbearable emotional distress to Plaintiff.

32.     Plaintiff's termination of employment at the Corporation came about as follows: Plaintiff again complained to Mr. Romacci and Mr. Bruno about how the treatment to which he was subjected by the Employer was unacceptable. Mr. Bruno responded that Plaintiff was to report to him on Friday, November 5, 2021 to discuss this issue. Plaintiff was also directed to not attend work on the day before such face to face meeting.

33.     Although Plaintiff anticipated that this scheduled November 5 meeting will be another one similar to the past, during which he will be cursed and yelled at and perhaps physically mishandled, he was ready to attend such meeting with the hope that there is a slight possibility that he may make some progress in having the Defendants treat him somewhat better.

34.     Upon information and belief, on November 4, 2021, the day before the scheduled face to face meeting, Mr. Bruno called the other employees of the Employer for a meeting during which Mr. Bruno and Mr. Romacci falsely declared to everyone in attendance that Plaintiff was a drug addict and spread other false negative information about Plaintiff.

35.     As a result of this meeting, following the period of ongoing physical and emotional abuse to which Plaintiff had continued to be subjected on a regular basis by the Defendants, Plaintiff decided to no longer return to work at the Corporation so as to prevent any additional emotional harm to him over and above the harm to which he had been subjected to by the Defendants in the past.

36.     When Plaintiff thereafter sought to recover his tools which he owned (after the Sherriff got involved and arranged for the Plaintiff to be able to pick up such tools from Defendants), the Defendants put them out in a public unprotected place from

which the public had been accustomed to freely take from which such tools were stolen, as will be discussed below.

37. As a result of all of the foregoing, the Plaintiff is seeking to recover damages, as will be discussed below in this Complaint.

38. Defendants' conduct extended beyond Plaintiff to all other situated employees. Plaintiff seeks certification of this action as a collective action on behalf of himself, individually, and all other similar situated employees and former employees of Defendants pursuant to 29 U.S.C. §216(b).

39. Besides the facts set forth in the last several paragraphs of this Complaint, we shall set forth additional facts that are pertinent to each of the specific causes of action set forth in the Complaint below.

## IV. AS AND FOR FIRST CLAIM FOR RELIEF
## (UNPAID WAGES AND OVERTIME/FLSA)

40. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 39, as if set forth fully herein.

41. Plaintiff's official work hours when he commenced working full time for the Corporation in June 2017 was Tuesday to Friday from 8 am to 6 pm (10 hours each day times 4 days, which is equal to 40 hours), plus from 8:30 AM until 3 PM on Saturdays (6.5 hours). Thus, Plaintiff was scheduled to work 46.5 hours each week.

42. In addition, Plaintiff was required to come to work early each day and stay late each day. On average, this additional time equaled approximately 3.5 hours each week. Thus, in total, Plaintiff worked about 50 hours each week.

43. Thus, although Plaintiff worked 50 hours each week, he was paid for only 40 hours each week.

44. Even though Plaintiff was given an hour lunch time for each of his four full days of work on Tuesday through Friday, he was not permitted to leave the premises during such time and was on call to perform duties when called upon during such official lunch breaks.

45. This was Plaintiff's daily schedule during his approximately first 2 years of full-time employment commencing in June 2017. At the time he was earning in the range of approximately $10 to $15 per hour.

46. Thus, Plaintiff worked approximately 1,040 hours (104 times 10) hours of overtime during each of those first two full time years of employment at the employer.

47. Multiplying 1,040 times (which is 1.5 times his hourly rate of the average rate of $12.5 per hour times 1,040) equals $13,000, which is the total amount of wages/overtime owed to him by the Defendants with respect to his 1,040 hours of overtime during Plaintiff's first two years full time years of employment at Defendants.

48. In or about June 2019, the Plaintiff's work hours were reduced by one half hour each day, in that Plaintiff's work day ended at 5:30 PM instead of 6 PM on Tuesdays through Fridays. Thus, commencing in our about June 2019, Plaintiff worked two hours less each week, resulting in his working approximately 48 hours each week.

49. Plaintiff continued not being paid for his hours of work over 40 hours each week. This continued until he terminated his employment with the Corporation on November 3, 2021.

50. Thus, Plaintiff during those years following his first two years of full time employment at the Employer until he terminated his employment at Defendants, Plaintiff worked approximately 117 weeks for which he was not paid for 8 hours of overtime for each such week, for a total of 936 hours for such weeks of work.

51. Plaintiff's average hourly rate of pay for those 117 weeks was $30 per hour. Thus, Plaintiff was owed $42,120 for those 117 weeks. (117 times 8hours times $30 times 1.5). .

52. Thus, Plaintiff is owed a total of $55,120 ($13,000 for his first two years of service plus $42,120 in overtime pay for his period of employment at the Defendants.

53. In addition, Plaintiff is entitled to and additional $55,120 as liquidated damages with respect to his overtime pay, plus statutory interest on such amounts.

54. To Plaintiff's knowledge, the Defendants did not utilize any time tracking device such as punch cards, that accurately reflected the actual hours Plaintiff worked.

55. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff (and all similarly situated employees) to work in

excess of 40 hours a week without paying them the appropriate overtime compensation as required by federal and state laws.

56. Plaintiff was a victim of Defendants' common policy and practice which violated his rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

57. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and the New York Labor Law by failing to maintain accurate and complete time sheets and payroll records.

58. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and the New York Labor Law.

59. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiff properly for his full hours worked.

60. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and New York Labor Law.

61. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff and other similarly situated current and former workers.

## V. AS AND FOR SECOND CLAIM FOR RELIEF
## (UNPAID WAGES AND OVERTIME/NEW YORK LABOR LAW)

62. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 61, as if set forth fully herein.

63. Plaintiff is owed $55,120 in unpaid wages and overtime pay pursuant to the New York Labor Law, on account of the Defendants not paying him the pay for his overtime hours to which he is entitled to under the New York Labor Law.

64. In addition, Plaintiff is entitled to an additional $55,120 as liquidated damages with respect to his overtime pay, plus statutory interest on such amounts.

## VI. AS AND FOR THIRD CLAIM FOR RELIEF
## (FAILURE TO PROVIDE WAGE STATEMENTS/NEW YORK LABOR LAW)

65. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 64, as if set forth fully herein.

66. Defendants failed to provide Plaintiff and other employees with accurate wage statements at the time of their payment of wages, containing the dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by §195(3).

## VII. AS AND FOR FOURTH CLAIM FOR RELIEF
## (FAILURE TO PROVIDE STATEMENTS AT TIME OF HIRE/NEW YORK LABOR LAW)

67. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 66, as if set forth fully herein.

68. Defendants failed to provide Plaintiff and other employees, at the time of hiring, a statement in English and the employee's primary language, containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## VIII. AS AND FOR FIFTH CLAIM FOR RELIEF
## (DEFAMATION)

69. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 68, as if set forth fully herein.

70. On or about November 4, 2021, the Defendants called a meeting of all the employees on a day that Plaintiff was not present. During that meeting, Mr. Bruno and Mr. Romacci announced to the employees that Plaintiff was a heroin addict. This statement relating to Plaintiff is false and defamatory, as Plaintiff is not, and was not, a heroin addict.

71. During that November, 2021 meeting, the Defendants also stated stated that they will get Plaintiff out and will prevent him from obtaining unemployment benefits.

72. On November or about 11, 2021, after Plaintiff's last day of work at the Defendants, the Defendants put on a sign facing the street, along with tools belonging to Plaintiff, falsely advising the public that Plaintiff was a junkie (i.e., a drug addict). This statement was false, as Plaintiff is not a drug addict.

73. Defendants maliciously made these false statements about Plaintiff, as described in the previous few paragraphs, knowing that they are false and with the intent to harm Plaintiff's reputation.

74. Plaintiff was harmed by these false defamatory statements and is entitled to compensatory and punitive damages on account of these statements.

75. Many of these incidents occurred within the few months preceding Plaintiff's termination of employment.

## IX. AS AND FOR SIXTH CLAIM FOR RELIEF
## (ASSAULT AND BATTERY)

76. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 75, as if set forth fully herein.

77. On several occasions throughout Plaintiff's employment at Defendant, Mr. Bruno physically grabbed Plaintiff in a threatening and intimidating manner. Plaintiff was often grabbed by the neck and lifted off his feet, or grabbed by his arms and shaken back and forth violently and was subjected to other similar physical attacks on several occasions, including several which occurred within the one year period preceding the date of the filing of this Complaint. Such physical grabbing was unwelcome and very distressing to Plaintiff.

78. Plaintiff was deeply emotionally affected by this unwanted physical attacks.

79. Such actions by Defendants was willful and wanton and intentional and, as a result, Plaintiff is entitled to recover compensatory and punitive damages.

80. Many of these incidents occurred within the few months preceding Plaintiff's termination of employment.

## X. AS AND FOR SEVENTH CLAIM FOR RELIEF
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

81. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 80, as if set forth fully herein.

82. On several occasions throughout Plaintiff's employment at Defendant, Defendants physically grabbed Plaintiff in a threatening and intimidating manner, as described above in this Complaint. Such physical grabbing was unwelcome and very distressing to Plaintiff.

83. Furthermore, Mr. Romacci and Mr. Bruno often yelled and cursed at Plaintiff in an unrelenting manner, often in the presence of customers and/or other employees.

84. Plaintiff was deeply emotionally affected by this unwanted physical and verbal abuse to which he was often subjected to.

85. Many of these incidents occurred within the few months preceding Plaintiff's termination of employment, including several which occurred within the one year period preceding the date of the filing of this Complaint.

86. Such actions by Defendants was willful and wanton and intentional and, as a result, Plaintiff is entitled to recover compensatory and punitive damages.

## XI. AS AND FOR EIGHTH CLAIM FOR RELIEF
## (NEGLIGENCE)

87. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 86, as if set forth fully herein.

88. After Plaintiff's termination of employment in November 2021, Plaintiff's father sought to recover Plaintiff's tools from the Defendants, and he so informed the

Defendants. Defendants initially refused to return the tools. However, after getting the Sheriff involved, a resolution was reached to have Plaintiff's father retrieve the tools.

89. On November 11, 2021, Defendants left the tools outside of their property in an area where it was known to the public that such items were free to be taken. Plaintiff's father was not advised of this action and Plaintiff's tools began to be taken by the public. The tools were left in such a manner so as to give the impression to the public that it was being discarded by the Employer.

90. As a result of this, many of the tools were taken and or damaged by the public.

91. As a result of these actions, Plaintiff has been damaged in the amount of about $6,000.

## XII. AS AND FOR NINTH CLAIM FOR RELIEF
## (UNSAFE WORK ENVIRONMENT)

92. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 91, as if set forth fully herein.

93. The Defendants regularly provided Plaintiff gasoline to clean his hands, motorcycles and surfaces, subjecting him to a dangerous condition.

94. Plaintiff was not offered sanitary water for drinking and the water in the sink was contaminated.

95. Plaintiff was not protected from motorcycles that were raised up high in the air and which were prone to either fall on someone below or to otherwise potentially cause an injury to employees; in fact, Plaintiff got hurt when a motorcycle came out of the clamp holding it which fell to the ground off the lift while Plaintiff was on the lift with the motorcycle. Mr. Romacci and Mr. Bruno, who witnessed this, did not help Plaintiff who was hurt, but instead yelled at Plaintiff about damaging the bike and advised Plaintiff that his pay will be docked so as to recover the amount of the damage to the motorcycle (which Defendants did).

96. Plaintiff and other employees had available to them only a single, old, unsanitary and dirty respirator when painting, when working with muriatic acid and other dangerous chemicals, and were not given access to any other protective gear.

97. Plaintiff was not permitted to take any work breaks during the day.

98. Plaintiff was not permitted to sit any part of the work day during he first three years he worked for Defendants.

99. Plaintiff was subjected to extreme heat

100. Plaintiff was subjected to bad air.

### XIII. AS AND FOR TENTH CLAIM FOR RELIEF
### (INVASION OF PRIVACY)

101. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 100, as if set forth fully herein.

102. Plaintiff was not permitted to have privacy when he needed to relieve himself.

103. The bathroom door had no lock and was repeatedly opened by the Defendants and customers while Plaintiff was using the facilities throughout his employment, taking away his required privacy.

104. Bathroom use was strictly monitored and limited. When Plaintiff spent more than a few minutes relieving himself, one or more of the Defendants would yell at him, or otherwise berate him, for doing so.

105. This action by Defendants caused Plaintiff to suffer from much emotional distress.

### XIV. AS AND FOR ELEVENTH CLAIM FOR RELIEF
### (FAILURE TO PROVIDE INSURANCE COVERAGE)

106. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 105, as if set forth fully herein.

107. The Defendants provided medical insurance coverage, and other benefits, to its employees who it designated as being full time employees.

108. Although Plaintiff was a full time employee, the Defendants did not provide him with medical insurance coverage, or other benefits it provides to its full time employees.

109. Plaintiff has been harmed in that he did not receive such insurance coverage to which he was entitled or to other benefits to which full time employees are entitled.

## XV. AS AND FOR TWLEFTH CLAIM FOR RELIEF
## (ILLEGAL DOCKING OF PAY)

110. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 109, as if set forth fully herein.

111. As described above in this Complaint, the Defendants docked Plaintiff's pay for four Saturdays during the second half of 2021 to recoup the alleged damage caused to the motorcycle that fell off the lift along with the motorcycle.

112. Accordingly, Plaintiff was illegally docked 26 hours of pay by the Defendants, amounting to $780 (26 hours times $30).

## XVI. FLSA COLLECTIVE ACTION CLAIMS

113. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 112, as if set forth fully herein.

114. Plaintiff brings his FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

115. At all relevant times, Plaintiff and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek and minimum wage under the FLSA and willfully failing to keep records under the FLSA.

116. The claims of Plaintiffs stated herein are similar to those of other employees.

## XVII. PRAYER FOR RELIEF

1. Plaintiff requests that the Court award Plaintiff the following relief:

15

## ON THE FIRST CLAIM FOR RELIEF

A. Actual damages for loss of wages and overtime pay, in an amount to be determined at trial, plus interest;

B. Liquidated damages equal to the amount of wages and overtime pay found to be due;

C. Prejudgment Interest;

D. Reasonable attorney's fees.

## ON THE SECOND CLAIM FOR RELIEF

A. Actual damages for loss of wages and overtime pay, in an amount to be determined at trial, plus interest;

B. Liquidated damages in an amount equal to the total amount of wages and overtime pay found to be due;

C. Prejudgment Interest;

D. Reasonable attorney's fees.

## ON THE THIRD CLAIM FOR RELIEF

A. $5,000

## ON THE FOURTH CLAIM FOR RELIEF

A. $5,000

## ON THE FIFTH CLAIM FOR RELIEF

**A.** Actual damages for monetary losses sustained by Plaintiff, in an amount to be determined at trial, plus interest;

B. Compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish, emotional distress, and financial hardship/duress sustained by Plaintiff;

C. Punitive damages, in an amount to be determined at trial;

### ON THE SIXTH CLAIM FOR RELIEF

  A. Actual damages for monetary losses sustained by Plaintiff, in an amount to be determined at trial, plus interest;

  B. Compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish, emotional distress, and financial hardship/duress sustained by Plaintiff;

  C. Punitive damages, in an amount to be determined at trial.

### ON THE SEVENTH CLAIM FOR RELIEF

  A. Actual damages for monetary losses sustained by Plaintiff, in an amount to be determined at trial, plus interest;

  B. Compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish, emotional distress, and financial hardship/duress sustained by Plaintiff;

  C. Punitive damages, in an amount to be determined at trial.

### ON THE EIGHTH CLAIM FOR RELIEF

  A. Actual damages for the lost and damaged tools in the amount of $6,000.

### ON THE NINTH CLAIM FOR RELIEF

  A. Compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish, emotional distress, and financial hardship/duress sustained by Plaintiff;

  B. Punitive damages, in an amount to be determined at trial.

### ON THE TENTH CLAIM FOR RELIEF

  **A.** Actual damages for monetary losses sustained by Plaintiff, in an amount to be determined at trial, plus interest;

B.  Compensatory damages, in an amount to be determined at trial, for humiliation, mental anguish, emotional distress, and financial hardship/duress sustained by Plaintiff;

C.  Punitive damages, in an amount to be determined at trial;

## ON THE ELEVENTH CLAIM FOR RELIEF

A.  Actual damages for monetary losses sustained by Plaintiff, in an amount to be determined at trial, plus interest;

B.  Reasonable attorney's fees.

## ON THE TWELFTH CLAIM FOR RELIEF

B.  Actual damages for loss of wages and overtime pay, in an amount to be determined at trial, plus interest;

B.  Liquidated damages in an amount equal to the total amount of wages and overtime pay found to be due;

C.  Prejudgment Interest;

D.  Reasonable attorney's fees.

## ON ALL CLAIMS

2.  Award Plaintiff the costs of this action.

3.  An order enjoining Defendant from engaging in the wrongful practices

4.  Grant Plaintiff such other and further relief as may be deemed necessary, just and proper by this Court.

## XIV. JURY DEMAND

Plaintiff demands trial by jury on all issues in this action properly triable before a jury.

Dated: Spring Valley, New York
May 18, 2022

*Bernard Weinreb*

Bernard Weinreb, Esq.
Attorney for Plaintiff
2 Perlman Drive, Suite 310
Spring Valley, New York 10977
(845) 369-1019
boruchw@cs.com